Filed 6/26/26; certified for publication 7/7/26 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TREVOR JOSEPH DECLOEDT, | B343963 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 24STCV25729) |
| v. | |
| RADNET MANAGEMENT, INC., et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Virginia C. Keeny, Judge.  Affirmed.

Lindsay M. Holloman, M. Alejandra Jimenez; Squire Patton Boggs and Jill Louise Ripke for Defendants and Appellants.

Shegerian & Associates, Carney R. Shegerian, Mahru Madjidi and Melineh Jingozian for Plaintiff and Respondent.

————————————————

This is an appeal from an order denying a motion to compel plaintiff and respondent Trevor Joseph Decloedt to submit his claims to arbitration.

Decloedt sued defendants and appellants Radnet Management, Inc.; RadNet, Inc.; Radnet Managed Imaging Services, Inc.; Joe Zambrano; and Susana Ceballos (collectively, appellants), alleging 11 state-law causes of action, including a cause of action for sexual harassment under our state's Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.).[1] The trial court denied appellants' motion to compel Decloedt to submit these claims to arbitration. The court based its decision on the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (EFAA; 9 U.S.C. §§ 401–402), which statute creates an exemption to the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.). The EFAA applies to "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." (See 9 U.S.C. § 401(4) & § 402(a).)

Appellants contend the EFAA does not apply to Decloedt's lawsuit. We disagree. We hold that harassment on the basis of sexual orientation is a form of sexual harassment under FEHA, and appellants fail to show the trial court erred in finding Decloedt sufficiently pleaded a FEHA sexual harassment claim. As to the latter point, we find Decloedt sufficiently alleged Ceballos subjected him to severe or pervasive harassment because of his homosexuality. In sum, we affirm the denial of appellants' motion to compel arbitration.

---

[1] Undesignated statutory references are to the Government Code.

## PROCEDURAL BACKGROUND[2]

We summarize only those facts relevant to our disposition of this appeal.

In October 2024, Decloedt filed a complaint alleging: (1) discrimination in violation of FEHA; (2) hostile work environment harassment in violation of FEHA; (3) sexual harassment in violation of section 12940, subdivision (j);[3] (4) retaliation in violation of FEHA; (5) failure to provide reasonable accommodation in violation of FEHA; (6) failure to engage in the interactive process in violation of FEHA; (7) failure to prevent discrimination, harassment, or retaliation in violation of FEHA; (8) negligent hiring, supervision, and retention; (9) wrongful termination of employment in violation of public policy; (10) whistleblower retaliation under Labor Code section 1102.5; and (11) intentional infliction of emotional distress.

As relevant here, Decloedt levelled the second cause of action for hostile work environment and the third cause of action for sexual harassment against all five appellants and, with regard to both causes of action, Decloedt averred he suffered

---

[2] In describing the relevant facts and the procedural history of this case, we rely in part on undisputed parts of the trial court's order denying appellants' motion and on admissions made by the parties in their filings. (*Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 772, fn. 2 [utilizing this approach].)

[3] As we explain in our Discussion, part A, *post*, section 12940, subdivision (j) is a provision of FEHA that bars an employer from, inter alia, harassing an employee because of the latter's sex or sexual orientation.

harassment because of his sexual orientation.[4]  Further, Decloedt averred defendants and appellants Radnet Management, Inc., RadNet, Inc., and Radnet Managed Imaging Services, Inc. are his former employers; defendant and appellant Zambrano is Decloedt's former supervisor; and defendant and appellant Ceballos is Decloedt's former coworker.

In December 2024, appellants moved to compel arbitration pursuant to an arbitration agreement Decloedt had signed at the outset of his employment.  Appellants argued, inter alia, the FAA governs the arbitration agreement, and the FAA and the agreement obligate Decloedt to arbitrate all his employment-related claims against them.

On January 16, 2025, the trial court denied appellants' motion to compel arbitration.  The court found Decloedt had alleged a claim of sexual harassment under FEHA, thereby triggering the EFAA's exemption to the FAA for a case " 'relating to [a] sexual harassment dispute[.]' "  Appellants timely appealed.[5]  On March 12, 2025, the trial court granted

---

[4]  In connection with the second cause of action for hostile work environment, Decloedt also alleged he "was subjected to harassing conduct . . . in whole or in part on the bases of [his] physical disability, mental disability, . . . and/or other protected characteristics . . . ."  Elsewhere in the pleading, Decloedt averred he suffers from cerebral palsy and ADHD.

[5]  "An aggrieved party may appeal from:  [¶] . . . [a]n order dismissing or denying a petition to compel arbitration."  (Code Civ. Proc., § 1294, subd. (a).)

4

appellants' motion to stay the action during the pendency of this appeal.[6]

## APPLICABLE LAW AND STANDARD OF REVIEW

"As relevant here, the FAA provides, 'A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4.' [Citation.]" (*Liu v. Miniso Depot CA, Inc.* (2024) 105 Cal.App.5th 791, 801 (*Liu*), quoting 9 U.S.C. § 2.)

"Chapter 4 of the FAA, referenced in section 2 [of that statute], was added by the EFAA, which became effective on March 3, 2022. It consists of sections 401 and 402. Section 402 provides, in relevant part, 'Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute . . . , no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the . . . sexual harassment dispute.' [Citation.] As relevant here, section 401 defines ' "predispute arbitration agreement" ' as 'any agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement.' [Citation.] In addition, it defines

---

[6] We, sua sponte, take judicial notice of the trial court's March 12, 2025 minute order staying the action pending resolution of the appeal, and the minute order correcting that order nunc pro tunc. (Evid. Code, §§ 452, subd. (d), 459.)

' "sexual harassment dispute" ' as 'a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law.' [Citation.]" (*Liu*, *supra*, 105 Cal.App.5th at p. 801, quoting 9 U.S.C. § 402(a) & § 401(1) & (4).) We have previously held "the plain language of the EFAA exempts a plaintiff's entire case from arbitration where the plaintiff asserts at least one sexual harassment claim subject to the act." (*Liu*, at p. 796.)

"Where . . . ' "the trial court's denial of a petition to arbitrate presents a pure question of law, we review the order de novo." ' [Citations.]" (*Liu*, *supra*, 105 Cal.App.5th at p. 800.) Conversely, " '[i]f the trial court resolved contested facts, we "review the court's factual determinations for substantial evidence." [Citation.]' [Citation.]" (*Western Bagel Co., Inc. v. Superior Court* (2021) 66 Cal.App.5th 649, 662.)

Appellants argue we should review the trial court's order denying their motion de novo "because the issue on appeal does not turn on conflicting extrinsic evidence." (Boldface omitted.) Decloedt counters "the correct standard is substantial evidence" "because the trial court resolved factual disputes about the existence and enforceability of the arbitration agreement . . . ." (Boldface omitted.) To support his invocation of the substantial evidence standard, Decloedt claims, "The trial court considered competing evidence and found no enforceable agreement because the allegations 'fairly state a "concerted pattern of harassment" directed [at Decloedt] because of his sexual orientation,' sufficient to constitute sexual harassment." Decloedt also intimates his unconscionability defense to the enforcement of the arbitration agreement turns on the resolution of certain "factual disputes."

We agree with appellants that our standard of review is de novo because the trial court did not resolve any disputed facts. The court merely determined whether Decloedt stated a claim for sexual harassment under FEHA such that the EFAA's exemption to the FAA would apply. Whether the court properly interpreted and applied these statutes to the facts averred in the complaint is a question of law.[7] Furthermore, although Decloedt purports to "dispute[ ] the existence[ and] authenticity" of the arbitration agreement in his appellate brief, he does not argue the trial court erred in finding he did "not dispute that he signed the agreement or question its contents" during the lower court proceedings, nor does he offer any cogent argument disputing the existence and authenticity of the agreement. Lastly, the trial court did not pass upon Decloedt's unconscionability defense, and, even if it had, Decloedt's appellate briefing indicates his claim of unconscionability is predicated solely on the text of the agreement. In short, no contested factual issue is before us.

" ' "Even when our review on appeal 'is de novo, it is limited to issues which have been adequately raised and supported in [the appellant's opening] brief. [Citations.] Issues not raised in an appellant's brief are deemed waived or abandoned.' " [Citation.] To succeed[,] . . . [an appellant] must first establish error. . . . " '[T]he most fundamental rule of appellate review is

---

**7** (See *Lazarin v. Superior Court* (2010) 188 Cal.App.4th 1560, 1569 ["The proper interpretation of a statute and the application of the statute to undisputed facts are questions of law, which we . . . review de novo."]; *Holiday Matinee, Inc. v. Rambus, Inc.* (2004) 118 Cal.App.4th 1413, 1420 [indicating that whether a complaint " 'state[s] facts sufficient to constitute a cause of action' " "raises only a question of law"].)

that an appealed judgment or order is presumed to be correct.' [Citation.] It is the appellant who bears the burden of overcoming that presumption." [Citation.]' [Citation.] To 'rebut[ ] the presumption of correctness accorded to the trial court's decision,' the appellant must ' " ' "supply[ ] the reviewing court with some cogent argument supported by legal analysis and citation to the record." ' [Citation.]" [Citations.]' [Citation.]" (*Cruz v. Tapestry, Inc.* (2025) 113 Cal.App.5th 943, 953–954.)

We now turn to whether appellants have discharged this appellate burden.

## DISCUSSION

Appellants claim the trial court erred in concluding the EFAA applies to this case because: (1) Decloedt alleged Ceballos harassed him based on his sexual orientation, which is not a form of sexual harassment under FEHA; and (2) even if sexual orientation harassment were sexual harassment under FEHA, Decloedt failed to allege sufficient facts showing the harassment was severe or pervasive, which is a necessary element of a hostile work environment sexual harassment claim. Decloedt takes exception with both arguments, and asserts "the arbitration agreement at issue was unenforceable as unconscionable because it lacked mutuality and was for an indefinite duration."

As a prefatory matter, because the trial court denied appellants' motion to compel arbitration on the ground Decloedt alleged "conduct 'constitut[ing] sexual harassment . . . under applicable . . . State law' " for the purposes of the EFAA, the court impliedly found the FAA governs the enforceability of the

8

arbitration agreement.[8]  Appellants mention the California
Arbitration Act in passing in their opening brief.  Nevertheless,
they do not contest the trial court's presumptively correct ruling
the FAA governs the enforceability of the agreement or argue
state law would require the agreement's enforcement even if
Decloedt alleged a claim of sexual harassment covered by the
EFAA.  We thus proceed on the assumption the agreement to
arbitrate is unenforceable if the EFAA's exemption to the FAA is
applicable.

For the reasons set forth below, we hold that harassment
on the basis of sexual orientation amounts to sexual harassment
under FEHA.  (Discussion, part A, *post*.)  We also reject
appellants' contention Decloedt has not alleged conduct
constituting severe or pervasive sexual harassment.  (Discussion,
part B, *post*.)  We thus affirm the order denying appellants'
motion without addressing whether the arbitration agreement is
unconscionable.

## A.    Sexual Orientation Harassment is a Form of Sexual Harassment Under FEHA

FEHA provides in pertinent part that the following is an
"unlawful employment practice":  "For an employer . . . because
of . . . sex, gender, gender identity, gender expression, . . . [or]
sexual orientation[ ] . . . to harass an employee . . . ."  (See
§ 12940, subd. (j)(1); see also § 12900 [providing that part 2.8 of
division 3 of title 2 of the Government Code, which includes
§ 12940, "may be known and referred to as the 'California Fair

---

[8]  (See *Liu, supra*, 105 Cal.App.5th at p. 801 [noting the
EFAA is an exemption to the FAA's provision requiring
enforcement of arbitration agreements].)

9

Employment and Housing Act' "].)  Thus, an employer's harassment of an employee on the basis of the latter's sexual orientation or sex is *actionable* under FEHA.  Whether harassment because of sexual orientation constitutes *sexual harassment* for the purposes of FEHA is the question before us.[9]

As we noted above, FEHA proscribes harassment "because of . . . sex . . . ."  (See § 12940, subd. (j)(1).)  Similarly, title VII of the federal Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) bars an employer from " 'discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . .' [Citation.]"  (See *Bostock v. Clayton Cnty.* (2020) 590 U.S. 644, 655 (*Bostock*), quoting 42 U.S.C. § 2000e-2(a)(1).)  In construing that provision in title VII, the United States Supreme Court held, "An employer who fires an individual merely for being gay or transgender defies the law."  (See *Bostock*, pp. 649–652, 683.)  The high court explained that because the statute's "plain terms" "prohibit[ ] employers from taking certain actions 'because of' sex," an employer violates title VII if "the plaintiff's sex was one but-for cause of [a challenged employment] decision . . . ."  (See *Bostock*, at pp. 656, 662.)  The court further remarked, "When an employer fires an employee because she is homosexual or transgender, two causal factors may be in play — both the individual's sex and something else (the sex to which the individual is attracted or with which the individual identifies)."  (See *id.* at p. 661, italics omitted.)  Therefore, although

---

[9] As we discuss later in this part, section 12940, subdivision (j)(1) prohibits not only sexual harassment, but also harassment on the basis of other characteristics, including mental or physical disability.

"homosexuality and transgender status are distinct concepts from sex," "discrimination based on homosexuality or transgender status necessarily entails discrimination based on sex" for the purposes of title VII.  (See *Bostock*, at p. 669.)

We may rely upon *Bostock*'s construction of the statutory phrase "because of . . . sex" in title VII in construing precisely the same text in section 12940, subdivision (j)(1).  (See *Hall v. County of Los Angeles* (2007) 148 Cal.App.4th 318, 326, fn. 6 ["Because . . . the antidiscrimination objectives and public policy purpose of [FEHA and title VII] are the same, California's courts routinely rely on federal decisions to interpret analogous parts of FEHA."].)  We agree with *Bostock*'s holding that discriminating against an employee because of his or her homosexuality is discrimination on the basis of sex.  That logic applies with equal force when determining whether an employer who has harassed an employee because of his or her homosexuality has engaged in harassment because of the employee's sex.  For that reason, we conclude sexual orientation harassment is a form of harassment because of sex under FEHA.

*Quilala v. Securitas Security Services USA, Inc.* (2025) 117 Cal.App.5th 75 (*Quilala*) supports our conclusion.  There, an employee alleged his "supervisors and coworkers questioned his sexual identity, a manager asked if he 'suck[ed]' certain individuals, and that same manager mocked him by saying [the employee's] perceived sexual orientation was 'so embarrassing.' " (See *Quilala*, at pp. 80, 86.)  The employee "further alleged he was removed from a work assignment and had his [work] hours reduced because of [his] perceived sexual orientation[, and that a] field supervisor[ ] repeated[ly] refer[red] to him as 'Mrs. Quilala[.]' " (See *id.* at p. 86.)  The Court of Appeal agreed

11

with the trial court that these "allegations stated a plausible claim of sexual harassment under FEHA, bringing the dispute within the scope of the EFAA." (See *id.* at pp. 86–87.) In essence, *Quilala* held that the employee's claim that his employer harassed him because of his perceived sexual orientation constituted a claim of sexual harassment under FEHA.

Appellants make two arguments to the contrary. First, appellants argue, "FEHA specifically differentiates sex-based and sexual harassment from harassment based on *other protected characteristics* such as, *e.g., sexual orientation*, disability, and race." (Citing § 12940, subd. (j)(1) [proscribing harassment because of, inter alia, "race, . . . physical disability, mental disability, . . . sex, gender, gender identity, gender expression, . . . [and] sexual orientation"].) Appellants direct us to the following subparagraph of the provision of FEHA proscribing harassment: " '[H]arassment' because of sex includes sexual harassment, gender harassment, and harassment based on pregnancy, childbirth, or related medical conditions. Sexually harassing conduct need not be motivated by sexual desire." (See § 12940, subd. (j)(4)(C).) They argue the omission of "sexual orientation" from subdivision (j)(4)(C)'s list of protected characteristics, and the inclusion of that term in the provision proscribing workplace harassment (i.e., subdivision (j)(1)), demonstrates "[s]exual orientation harassment is a distinct type of harassment under FEHA, like disability harassment."

Appellants, however, ignore the "basic principle of statutory construction[ that] 'include' is generally used as a word of enlargement and not of limitation. [Citation.] Thus, where the word 'include' is used to refer to specified items, it may be expanded to cover other items." (See *Rea v. Blue Shield of*

12

*California* (2014) 226 Cal.App.4th 1209, 1227.) In accordance with that principle, we read section 12940, subdivision (j)(4)(C) as a provision by which the Legislature removed any doubt that harassment based on gender, pregnancy, childbirth, and medical conditions relating to pregnancy and childbirth constitute harassment because of sex, even though that form of harassment may not be motivated by sexual desire. We do not agree that by omitting other characteristics inextricably intertwined with an employee's sex, the Legislature intended for those omitted characteristics to be excluded from subdivision (j)(1)'s proscription of harassment because of sex.

Second, appellants assert, "*Quilala* did not hold that harassment based on sexual orientation constitutes sexual harassment or harassment based on sex under FEHA. [The employee in *Quilala*] alleged some conduct based on his sexual orientation, **but he also alleged harassing conduct that was expressly sexual in nature and/or based on his sex/gender.** [Citation.] For example, [the employee] alleged specific lewd, sexual comments from his coworkers and supervisors in the workplace, such as accusations regarding whether [the employee] 'suck[ed]' certain individuals, intrusive questions about his sex life, mocking and questioning of his sex/gender, and insults targeting his sex/gender (*e.g.*, a supervisor taunting the male [employee] as 'Mrs. Qulilala' every time he saw him), in addition to statements that [the employee's] perceived sexual orientation was 'so embarrassing.' [Citation.]"

Appellants' interpretation of the *Quilala* decision reflects a misunderstanding of FEHA's definition of sexual harassment. " '[I]t is the disparate treatment of an employee on the basis of sex — not the mere discussion of sex or use of vulgar language —

13

that is the essence of a sexual harassment claim [under FEHA].' [Citation.]" (See *Singleton v. United States Gypsum Co.* (2006) 140 Cal.App.4th 1547, 1561.) Indeed, our high court explained, "[A] plaintiff may establish a hostile work environment without demonstrating the existence of coercive sexual conduct directed at the plaintiff or even conduct of a sexual nature." (See *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 469.) Thus, whether the employee in *Quilala* alleged a claim of sexual harassment under FEHA turned on whether his supervisors and coworkers harassed him because of his sex, and not on whether they referred to him with vulgar or sexualized language. The employee averred facts showing his supervisors and coworkers subjected him to "repeated and humiliating conduct" because of his perceived sexual orientation. (See *Quilala*, *supra*, 117 Cal.App.5th at p. 86.) In concluding the employee "stated a plausible claim of sexual harassment under FEHA" (see *Quilala*, at pp. 86–87), the *Quilala* court necessarily concluded that harassment on account of sexual orientation is a type of sexual harassment.

## B. Decloedt Sufficiently Alleged that Ceballos Subjected Him to Severe or Pervasive Harassment Because of His Sexual Orientation

To invoke the EFAA's exemption from the FAA, Decloedt must "alleg[e] conduct constituting a sexual harassment dispute" "under applicable . . . State law." (See 9 U.S.C. § 401(4) & § 402(a).) Appellants maintain (1) the EFAA required Decloedt to allege facts "sufficient to survive a motion to dismiss under Federal Rule[s] of Civil Procedure[, rule] 12(b)(6)" (Rule 12(b)(6)), and (2) even if sexual orientation harassment is a type of sexual harassment under FEHA, Decloedt's allegations fell short of

14

pleading that Ceballos subjected him to sexual harassment that was sufficiently severe or pervasive to give rise to liability under FEHA. Assuming arguendo the pleading standard in Rule 12(b)(6) applies, we conclude Decloedt sufficiently alleged Ceballos subjected him to severe or pervasive harassment because of his sexual orientation.

"To prevail on a claim of hostile work environment under FEHA, an employee must show he or she was subjected to harassing conduct that was (1) unwelcome, (2) because of sex or gender, and (3) sufficiently severe or pervasive to alter the conditions of [his or] her employment and create an abusive work environment." (*Wawrzenski v. United Airlines, Inc.* (2024) 106 Cal.App.5th 663, 692.) " ' " '[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)' " are not sufficient to create an actionable claim of harassment.' [Citation.] . . . [A] hostile work environment exists when harassing conduct 'sufficiently offends, humiliates, distresses, or intrudes upon its victim,' such that it disrupts emotional tranquility or interferes with the victim's sense of well-being or ability to perform his or her job." (*Quilala, supra,* 117 Cal.App.5th at p. 86.) "Harassment of an employee . . . by an employee, other than an agent or supervisor, shall be unlawful if the [employer], or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action." (See § 12940, subd. (j)(1).)[10]

_____

**10** Although appellants argue Decloedt failed to plead adequately Ceballos subjected him to sexual orientation harassment that was "sufficiently severe or pervasive as to have altered the conditions of [his] employment," they do not contend

15

Rule 12(b)(6) authorizes a party to assert by motion the defense that a pleading "fail[s] to state a claim upon which relief can be granted . . . ." (See Fed. Rules Civ. Proc., rule 12(b)(6).)

"To survive a motion to dismiss [under Rule 12(b)(6)], the plaintiff's complaint 'must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." ' [Citation.]" (See *Boquist v. Courtney* (9th Cir. 2022) 32 F.4th 764, 773 (*Boquist*).) In analyzing whether the complaint survives a Rule 12(b)(6) motion, "[t]he facts in the complaint are liberally construed in the plaintiff's favor and are generally accepted as true." (See *Ibrahim v. Department of Homeland Sec.* (9th Cir. 2012) 669 F.3d 983, 992 (*Ibrahim*).) "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' [Citation.] A court must 'draw all reasonable inferences in favor of the nonmoving party.' [Citation.] 'Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' [Citation.] Ultimately, '[d]ismissal is proper under Rule 12(b)(6) if it appears beyond doubt that the non-movant can prove no set of facts to support its claims.' [Citation.]" (*Boquist*, at pp. 773–774.)

Allegations of Ceballos's sexual harassment of Decloedt appear in paragraphs 13.b and 13.c of the complaint, which provide:

---

Decloedt failed to allege sufficiently that Ceballos's conduct was unwelcome or that the pleading does not show Ceballos's conduct can be imputed to her employer.

16

"b.     In early 2022, Decloedt began working at a desk adjacent to another patient service representative, Ceballos, who began subjecting him to harassment based on his sexual orientation.  She made derogatory comments such as, 'you shouldn't be gay; it's not okay; it's sinning.'  Ceballos not only continually harassed Decloedt for his sexual orientation but also exhibited aggressive behavior when he tried to assist her with client issues.  She frequently expressed anger, even going as far as threatening him with comments like 'I am so angry, I could kill you' and attempting to physically harm him by pulling his hair.  At other times, Ceballos would switch from being angry to inappropriately caressing his hair and running her fingers through it, engaging in unwanted and invasive physical contact.  Decloedt reported these incidents to Zambrano and the patient service representative lead, Juan Mercado ('Mercado'), but no action was taken.

"c.     In November 2022, Tobias physically attacked Decloedt by grabbing his hair, forcing him to seek refuge in the bathroom after advising her to calm down following a client interaction.[11]  Again, Decloedt reported this incident to Zambrano, but was met with no action.  A few days later, HR called Decloedt into their office and attempted to write him up, based on a complaint from Ceballos that he had

---

[11] Both parties agree in their briefing the "Tobias" referenced in this passage from the complaint is Ceballos.

17

been disrespectful. However, he informed HR of all the physically, sexually, and emotionally harassing actions Ceballos had taken, as well as the numerous times he had reported them to Zambrano and Mercado, who had not taken any action. Decloedt also expressed that the harassment had taken such a toll on him that he had contemplated suicide. No action was taken by HR to address the situation with Ceballos."[12]

These excerpts from the complaint may reasonably be construed to allege Ceballos repeatedly informed Decloedt at work she believed his homosexuality was an abomination. Ceballos's alleged statement that Decloedt's sexual orientation was a " 'sin[ ]' " demonstrates she believed his homosexuality was morally reprehensible and worthy of condemnation. Although Decloedt does not aver Ceballos made these anti-gay remarks on the occasions in which she threatened him or pulled his hair, one could reasonably infer from the frequency with which she expressed her disapproval of his sexuality and the intensity of that disapproval that her anti-gay animus motivated that behavior.

Accordingly, the complaint may reasonably be read as alleging (1) over the course of several months, Ceballos (a) repeatedly chastised Decloedt for his homosexuality, and (b) "frequently expressed anger" by (i) stating she was so angry she could kill him and (ii) pulling his hair several times, (2) on

---

[12] Decloedt further alleges, "On February 28, 2023, Decloedt was abruptly terminated by Sarah from HR while at work. When asked for the reason, she simply stated, 'it's not working anymore,' without providing any further explanation."

18

one occasion, Ceballos grabbed Decloedt's hair with such force he fled to the restroom to escape from her, and (3) Ceballos engaged in this abusive conduct because she disapproved of Decloedt's sexual orientation.  Because Decloedt alleged Ceballos's misconduct caused him to flee for his safety and "contemplate[ ] suicide," one could reasonably infer her behavior "disrupt[ed his] emotional tranquility and interfere[d] with [his] sense of well-being or ability to perform his . . . job" such that it was "sufficiently severe or pervasive" to support a claim of sexual harassment.  (See *Quilala, supra*, 117 Cal.App.5th at p. 86.)

Appellants' arguments to the contrary are unavailing.

First, appellants contend Decloedt did "not allege that Ceballos'[s] angry or aggressive conduct was based on sex or even his sexual orientation" because "the [c]omplaint expressly distinguishes between (a) the conduct based on sexual orientation (i.e., the comment(s) mentioned [in the pleading]), and (b) the angry/aggressive conduct based on [Decloedt] getting involved in Ceballos'[s] handling of client issues."  (Boldface omitted from second quotation.)  In support of this purported dichotomy, appellants rely heavily on the following sentence in the complaint:  " 'Ceballos ***not only*** continually harassed Decloedt for his sexual orientation ***but also*** exhibited aggressive behavior when he tried to assist her with client issues.' [Citation.]" (Boldface & italics added by appellants.)  They further note Decloedt averred Ceballos made threatening comments and pulled his hair when he advised her on client issues.

In effect, appellants are inviting us to ignore an essential principle governing Rule 12(b)(6) motions, that is, a court "liberally construe[s]" the complaint's allegations "in the plaintiff's favor . . . .  [Citation.]"  (See *Ibrahim, supra*, 669 F.3d

19

at p. 992.)  They advance a technical construction of the complaint that hinges on a supposed distinction between continual harassment on the basis of sexual orientation and anger directed at Decloedt when he offered to assist Ceballos with her client interactions.  This is not the only permissible reading of the complaint.  One could reasonably interpret the passage in question as merely distinguishing between two forms of harassment Decloedt endured because of his sexual orientation:  (1) Ceballos's continual harassment of Decloedt via her criticism of his sexual orientation, and (2) her aggressive behavior directed at Decloedt when he attempted to assist her with client issues.  We thus reject appellants' argument that Ceballos's oral statements constituted the only form of harassment based on sexual orientation that appears in the complaint.

Second, appellants argue that we should disregard as conclusory Decloedt's allegation that Ceballos " 'continually harassed [him] for his sexual orientation[,]' " and deem him to have alleged only the one specific anti-gay comment identified in his complaint.  The federal "pleading standard . . . does not require 'detailed factual allegations[.]' "  (See *Ashcroft v. Iqbal* (2009) 556 U.S. 662, 678.)  To plead a FEHA sexual harassment claim, Decloedt thus did not have to specify the precise frequency with which Ceballos subjected him to harassment.  Further, the assertion that Ceballos "continually" made anti-gay statements to Decloedt is not " 'a legal conclusion couched as a factual allegation' " that federal courts may not accept as true at the pleading stage.  (See *ibid.*)  Rather, we may infer from that allegation that Ceballos expressed her disapproval of Decloedt's

20

sexual orientation on multiple occasions between early 2022 and November 2022.

In sum, the trial court did not err in ruling Decloedt sufficiently alleged a FEHA claim of sexual harassment triggering the EFAA's exemption to the FAA.

## DISPOSITION

We affirm the trial court's January 16, 2025 order denying the motion to compel arbitration filed by defendants and appellants Radnet Management, Inc., RadNet, Inc., Radnet Managed Imaging Services, Inc., Joe Zambrano, and Susan Ceballos.  Plaintiff and respondent Trevor Joseph Decloedt is awarded his costs on appeal.


BENDIX, J.


We concur:



ROTHSCHILD, P. J.



M. KIM, J.


21

Filed 7/7/26

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE


| | |
|---|---|
| TREVOR JOSEPH DECLOEDT, | B343963 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 24STCV25729) |
| v. | |
| RADNET MANAGEMENT, INC., et al., | CERTIFICATION AND ORDER FOR PUBLICATION |
| Defendants and Appellants. | [NO CHANGE IN JUDGMENT] |


      The opinion in the above-entitled matter filed on June 26, 2026, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports, and it is so ordered.

      There is no change in the judgment.

      <u>CERTIFIED FOR PUBLICATION.</u>

_____

ROTHSCHILD, P. J.        BENDIX, J.        M. KIM, J.